**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GEORGE CRAIG,                                                    Case No. 1:11-cv-885

            Plaintiff,                                            Barrett, J.
                                                                Bowman, M.J.
     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff George Craig filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.   *See* 42 U.S.C. §405(g).   Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.   For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

## I.  Summary of Administrative Record

In November 2007, Plaintiff filed an application for Supplemental Security Income (SSI) alleging a disability onset date of January 1, 1997 due to mental impairments.   After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").   On February 17, 2010, an evidentiary hearing was held, at which Plaintiff was represented by counsel.   (Tr. 45-72).   At the hearing, the ALJ heard testimony from Plaintiff and Dr. Vanessa Harris, an impartial vocational expert.   On April 9, 2010, ALJ Paul Yerian denied Plaintiff application in a written decision.   (Tr. 16-35).

The record on which the ALJ's decision was based reflects that Plaintiff was 45 years old on the date his application, and had a limited education.   (Tr. 29).   He had no past relevant work.   (Tr. 29).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "major depression, recurrent; a personality disorder, NOS; and substance abuse in remission."   (Tr. 21).   The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a full range of work at all extertional levels, with the following nonexertional limitations:

> He can perform simple, repetitive tasks in a static environment, characterized as few changes in routine and with only superficial contact with others.  He is also limited to work that does not involve a rapid work-pace.

(Tr. 24).   Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, limited education and work experience, and the RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy.   (Tr. 30).   Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI.   (Tr. 30-31).

The Appeals Council denied Plaintiff's request for review.   Therefore, the ALJ's decision stands as the Defendant's final determination.   On appeal to this Court, Plaintiff

2

maintains that the ALJ erred by: 1) failing to give controlling weight to the disabling opinions of the treating and examining physicians; and 2) improperly formulating Plaintiff's residual functional capacity.    Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignments of error are not well-taken.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.   *See* 42 U.S.C. §1382c(a).   Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.   *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.    42 U.S.C. § 405(g).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).   In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).   If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.   *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).   As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.   If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*   (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.   *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

## B.   Relevant Record Evidence

On August 31, 2004 Plaintiff underwent a mental health screening at the State correctional facility[1] (Tr. 196).   It was noted in the initial assessment that Plaintiff was

---

1 Plaintiff was incarcerated from 1997 to 2006 for the attempted murder of his ex-girlfriend.

experiencing auditory hallucinations, becoming withdrawn from activities, having frequent nightmares, and was diagnosed with major depression including psychotic features (Tr. 198).   Plaintiff's medical file while incarcerated also noted that Plaintiff experienced no more than "intermittent" auditory hallucinations and had an average level of intelligence functioning and memory (Tr. 205-07).   In August 2006, Plaintiff reported that he had not heard any voices in over a year; and also reported at that time that he was 100 percent compliant with his medication regimen.   (Tr. 199, 200).

Upon his release from prison, Plaintiff was referred to Mental Health Access Point after presenting to the emergency psychiatric ward at University Hospital in February 2008 for psychosis.   Treatment notes indicate a diagnosis of major depressive disorder, recurrent, moderate and personality disorder NOS.   (Tr. 233).   Short and long-term memory problems were also noted and it appeared that Plaintiff had some learning disabilities.   (Tr. 236).   It was also noted that Plaintiff has a high propensity and risk for violence, and his chart included warnings not to meet with Plaintiff alone, and that he becomes delusional when severely stressed.   (Tr. 240).

Plaintiff continued treating for major depressive disorder with psychotic features with Dr. Hellman at Greater Cincinnati Behavioral Health (GCBH).   Treatment notes evidence problems with concentration, low energy, auditory hallucinations, and anhedonia.   (Tr. 254-262).   GCBH provided further records indicating persistent anxiety, dysphoria, continued hallucinations, psychosis, agoraphobia, and the presence of psychomotor agitation.   (Tr. 332-356).

In June 2008, Plaintiff underwent a consultative examination with Dr. Schmidtgoessling.   Dr. Schmidtgossling found marked limitations due to Plaintiff's anxiety

5

and his inability to leave the home. (Tr. 273). She assigned a GAF of 48 which indicates severe symptoms. *Id.*

Dr. Voyten, a state agency psychologist, reviewed Plaintiff's medical records in July 2008 and opined that Plaintiff had no more than moderate mental limitations consistent with the ALJ's RFC finding. (Tr. 24, 28, 276-77). Dr. Voyten noted that the record revealed that Plaintiff's symptoms responded well to treatment and medication. (Tr. 278). Dr. Voyten also noted that Plaintiff was able to hold a job as a porter without difficulty while incarcerated for eight years. (Tr. 278).

In December 2009, Dr. Hellman checked a box on his treatment form indicating that Plaintiff was unable to secure or maintain employment. (Tr. 28, 369). Additionally, in January 2010, Dr. Hellman opined that Plaintiff's "mental disability and physical disabilities [create] an inability to work or properly care for himself." (Tr. 28, 358).

## C. Specific Errors

### 1. *Evaluation of the Opinion Evidence*

Plaintiff's first assignment of error asserts that the ALJ erred by disregarding the opinions of the treating and examining physicians that Plaintiff is disabled. As noted above, at step-two of the sequential evaluation the ALJ found Plaintiff's social phobia; general anxiety disorder; borderline intellectual functioning, and dysthymic disorder to be severe impairments. (Tr. 17). At step-three, the ALJ found that Plaintiff's impairments did not meet or equal any of the Listings for mental disorders. In light of the foregoing and as detailed above, the ALJ determined that Plaintiff was capable of work at all exertional

6

levels with certain mild to moderate restrictions in light of his mental impairments. (Tr. 20). With respect to the opinion evidence, the ALJ gave no weight to the opinions of Dr. Hellman or Dr. Schmitdgoesling. (Tr. 28). Instead, in formulating Plaintiff's RFC, the ALJ gave great weight to the findings of Dr. Voyten, the state agency physician who reviewed Plaintiff's medical records in July 2008.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

7

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see *also West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Upon careful review, the undersigned finds that the ALJ properly weighed the opinion evidence. With respect to Dr. Hellman, the ALJ found that Dr. Hellman's opinions were not reliable because they were inconsistent with many of his own treatment notes (Tr. 28-29). As found by the ALJ, Dr. Hellman consistently noted that Plaintiff was doing "reasonably well" or "well" (Tr. 332, 335, 347), his condition was stable (Tr. 335), and his symptoms were controlled and improved with medication. (Tr. 335, 338, 344, 347, 351). The ALJ also noted that Dr. Hellman began to discuss severe mental symptoms only after a meeting in December 2009 where Plaintiff "openly discussed his needs as far as [SSI]

and other financial assistance" (Tr. 29, 369).   However, treatment notes from this same visit indicated that Plaintiff "responded well" to treatment and had a "good plan for improving his life." (Tr. 370).

The ALJ further noted that Dr. Hellman's extreme opinions were also inconsistent with the Global Assessment of Functioning (GAF) scores in the 61-70 range that he frequently assigned to Plaintiff during treatment.   (Tr. 29, 334, 337, 340, 356).   A GAF score of 61-70 indicates that person has only mild symptoms or some difficulty with social, occupational or school functioning, but such a person can generally functioning pretty well and have some meaningful interpersonal relationships.   *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. text. rev 2000).

Plaintiff argues, however, that the ALJ misinterpreted Dr. Hellman's notations that Plaintiff was doing well.   (Doc. 8 at 8).   Plaintiff asserts that the phrase "doing reasonably well" indicates that there is a top threshold of how well one could expect someone to be coping given a special circumstance.   According to Plaintiff, even if he experiences some symptom-free periods of time that does not equate to the ability to work on a sustained basis.   Despite such arguments, the undersigned finds that the ALJ properly analyzed Dr. Hellman's findings and reasonably determined that Dr. Hellman's treatment notes were inconsistent with and not supportive of his extreme opinions.   *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009) (Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that

opinion).[2]    In light of the foregoing, the undersigned finds that the ALJ reasonably

declined to give controlling weight to the findings of Dr. Hellman.

Next, the ALJ reasonably determined that Dr. Schmidtgoesling's opinion was not an

accurate representation of Plaintiff's limitations and properly declined to credit her

findings.   (Tr. 23, 28).   The ALJ found Dr. Schmidtgoesling's opinion was not entitled to

great weight because Plaintiff exaggerated his symptoms, misrepresented his educational

level and degree of isolation during her examination.   (Tr. 28, 278-79).    Notably,

Plaintiff's allegations of frequently hearing voices to Dr. Schmidtgoesling were not

supported by the record. (Tr. 272, 278).   For example, in August 2006, Plaintiff reported

that he had not heard any voices in over a year and at that time that he was 100 percent

compliant with his medication regimen. (Tr. 199, 200).   Plaintiff's medical file while

incarcerated also indicated that Plaintiff experienced no more than intermittent auditory

hallucinations and had an average level of intelligence functioning and memory (Tr. 205

07).   Furthermore, Plaintiff informed Dr. Schmidtgoesling that he had only completed

seventh grade. (Tr. 270).   However, the record indicates that Plaintiff informed prison

---

[2]  Plaintiff further argues that the ALJ improperly rejected Dr. Hellman's opinions that Plaintiff was "unable to secure/maintain employment" and that his "mental and physical disabilities [create] an inability to work" because such a finding touched on Plaintiff's employability, not his limitations. (Tr. 29, 358, 369).   According to Plaintiff, where Dr. Hellman described that Plaintiff was not able to work, the conclusion was not that of a specific RFC, but rather the medical opinion of a treating physician with a longitudinal history of observing, interacting, and treating Plaintiff concluding that Plaintiff cannot work.   However, as properly noted by the Commissioner and the ALJ,   the ultimate issue of disability is reserved solely for the Commissioner and, therefore, under the agency's regulations, is not entitled to any special significance or controlling weight. 20 C.F.R. § 416.927(e)(3); see also Social Security Ruling (SSR) 96-5p ("Treating source opinions on issues reserved to the Commissioner will never be given controlling weight.").   As the Sixth Circuit has noted, "'[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).

medical personnel that he had completed eighth grade and eventually his earned general equivalency degree (GED) (Tr. 23, 197, 278).  Accordingly, the ALJ properly gave no weight to Dr. Schmidtgoesling's opinion because it was inconsistent with the evidence in the record.  *See* 20 C.F.R. § 404.1527(d)(4) ("*Consistency*. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").

Last, the ALJ properly credited Dr. Voyten's opinion.   As noted above, Dr. Voyten reviewed Plaintiff's medical records in July 2008 and opined that Plaintiff had no more than moderate mental limitations consistent with the ALJ's RFC finding. (Tr. 24, 28, 276-77). Dr. Voyten noted that the record revealed that Plaintiff's symptoms responded well to treatment and medication.  (Tr. 278).  Dr. Voyten also noted that Plaintiff was able to hold a job as a porter without difficulty while incarcerated.  (Tr. 278).  In light of the foregoing, the ALJ reasonably found that Dr. Voyten's findings were consistent with the evidence in the record. (Tr. 28).

In sum, the ALJ's decision indicates that he thoroughly considered the medical evidence and treatment history and properly found that they did not support a finding of disability.  Furthermore, the ALJ clearly articulated his reasoning for the weight assigned to the opinions of Drs. Hellman and Schmidgoesling, and the undersigned finds that the ALJ's decision to give little weight to their findings is supported by substantial evidence.

### 2.  Plaintiff's RFC Assessment

Plaintiff's final assignment of error asserts that the ALJ improperly evaluated the evidence in determining Plaintiff's RFC.  As noted above, at step-five of the sequential evaluation, the ALJ concluded that Plaintiff was capable of performing work at all

exertional levels, including heavy exertional cleaner and heavy exertional horticulture worker.    Plaintiff, however, asserts that such a determination is not substantially supported because the ALJ arrived at his RFC assessment by "picking and choosing what parts of testimony he wanted to address."   (Doc. 8 at 9).   Plaintiff further asserts that the ALJ improperly disregarded the vocational expert testimony and argues that the ALJ failed to resolve the conflict in the record over Plaintiff's level of education.   Plaintiff's assertions lack merit.

First, aside from asserting that the ALJ selectively relied on the evidence in formulating Plaintiff's RFC, Plaintiff fails to develop this argument in any meaningful way. Notably, Plaintiff fails to identify what evidence the ALJ improperly relied on and/or ignored.   The Court has no obligation to search the record to develop and support the arguments of the parties.   *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).   Rather, the Court's review is limited to the specific issues the parties raise.   *Id.*   Plaintiff's conclusory allegations fail to identify or sufficiently explain whether the record contains evidence that is inconsistent with the ALJ's findings.

Second, Plaintiff's assertion that the ALJ disregarded the testimony of the vocational expert is also not well-taken.   In response to hypothetical questions by Plaintiff's counsel, based upon the opinions of Dr. Hellman, the VE testified that an individual with such impairments would be unemployable.   (Tr. 68)   However, as explained above, the ALJ reasonably did not include those limitations because they are not supported in the record.   The ALJ was not required to include limitations in his

12

hypothetical question that were not supported or not credible.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").  The VE's testimony provided substantial evidence supporting the ALJ's finding that Plaintiff was not disabled because he could perform a significant number of jobs (Tr. 616-20).  *See Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

Next, as noted by the Commissioner, the ALJ properly determined that Plaintiff had a limited education.  As discussed above, there was conflicting evidence regarding Plaintiff's educational level.  Plaintiff informed Dr. Schmidtgoesling that he had only completed seventh grade, however, at the administrative hearing, Plaintiff testified that he had only completed the fifth grade. (Tr. 51, 270).  Yet, the ALJ noted, while incarcerated, Plaintiff informed prison medical personnel that he had quit school in ninth grade and eventually received his GED.  (Tr. 197).  In light of the foregoing, the ALJ properly considered Plaintiff's educational background by limiting him to jobs that involved only simple, repetitive tasks performed in a static environment that involved few changes in routine, only superficial contact with others, and no rapid pace work.   (Tr. 24).

Finally, to the extent that Plaintiff is arguing that he is physically unable to perform heavy level work, such an assertion in unavailing.  As noted by the Commissioner, the ALJ relied on the opinion Dr. Martin Fritzhand in finding that Plaintiff had no physical limitations (Tr. 21-22).  Dr. Fritzhand examined Plaintiff at the request of the state agency in August 2008 and opined that Plaintiff had no physical limitations.  (Tr. 301).  The ALJ

13

also noted that there were no medical opinions in the record that contradicted Dr. Fritzhand's opinion. (Tr. 22).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Here, as outlined above, the ALJ's RFC finding is substantially supported and should not be disturbed.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GEORGE CRAIG,                                                  Case No. 1:11-cv-885

            Plaintiff,                                         Barrett, J.
                                                               Bowman, M.J.

     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

            Defendant.


**NOTICE**


Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time.   All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.   A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.   Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

15